# GRAND LODGE ANCIENT ORDER OF UNITED WORKMEN OF MISSOURI v. BRIDGET McFADDEN et al.; MARY O'MALLEY, Appellant.

### Division One, July 3, 1908.

1. **LIFE INSURANCE: Insanity of Insured: Finding of Trial Court: Appellate Practice.** Where the trial court found that the holder of a beneficiary certificate was sane at the time he executed certain documents relating to a change in the beneficiary of the insurance, and there was evidence both to sustain that issue and to the contrary, the finding of the trial court will, on appeal, be accepted as a settlement of that issue.

2. **————: Benefit Certificate: Change of Beneficiary: Vested Interest: Retrospective Statute.** Section 1417, Revised Statutes 1899, Laws 1897, p. 135, providing that no contract between a member of a fraternal beneficiary association and his beneficiary, that the beneficiary or any person for him shall pay such member's assessments and dues, shall give the beneficiary a vested right in such certificate, or in the benefit derived therefrom, or deprive the member of the right to change the name of the beneficiary, was not retrospective in its operation, and did not confer any vested right in a certificate issued in 1886 upon the new beneficiary designated by the member.

3. **————: ————: ————: Prior to 1897.** Prior to 1897 the statutes neither expressly prohibited nor permitted a member of a fraternal beneficiary association to change the name of his beneficiary.

4. **————: ————: ————: ————: Vested Interest.** Under the statutes of this State a beneficiary named in a certificate of a fraternal beneficiary association issued in 1886 had no vested interest therein. Unless there is found in the laws of the State where the association was incorporated, or in its charter or by-laws, or in the terms of the certificate itself, some provision prohibiting or restricting the right of a member to change the beneficiary, he may do so with the same freedom that he may change the legatee of his will by making a new will.

5. **————: ————: ————: Payments By Beneficiary: Vested Interest.** The mere payment of assessments and dues by the beneficiary named in the benefit certificate under an agreement with the member that the beneficiary would pay them, gives the beneficiary no such equity under the certificate as estops the member from designating another beneficiary.

6. ——: ——: ——: ——: ——: **Substituting Wife With Another.** A beneficiary certificate was issued to a member of the order in 1886, and his wife was named as the beneficiary. Without cause the member thirteen years prior to his death in 1903 turned his wife out of doors and thereafter wholly abandoned her, and she continued to pay the assessments and dues up to 1901, and in January of that year he sent the certificate by one of his daughters to her with a message to the effect that he was having some trouble with some persons who owed him money and that if anything should happen to him she would have the certificate to protect her and take care of her, but the evidence does not show that she surrendered anything of value to him to have herself designated or continued as beneficiary. Soon thereafter he turned against both his wife and children, and to provide for his declining years he agreed with O'Malley that he would adopt his daughter Mary, as his daughter and heir, and designate her as beneficiary in his certificate, if O'Malley would pay his assessments and maintain him during his life, and O'Malley accepted the offer and carried out the agreement and paid $950 thereunder, and the change of the beneficiary was duly made, and in accordance with the charter and by-laws of the order, which specifically provided for a change in beneficiaries. *Held,* that the wife had no such vested interest in the certificate as barred the member from designating Mary as a substituted beneficiary, but the wife must be reimbursed for all premiums she has paid, with six per cent interest, and the balance, less the costs and attorney's fees allowed the order for bringing its bill of interpleader, must be paid to Mary.

7. ——: ——: ——: **Manner of Making Change: Substantial Compliance: Waiver.** Where the member has made formal application for a change of the beneficiary and has done all that was in his power to do to comply with the by-laws regulating the manner of making such change, a non-observance of such of the regulations of the order as are for the sole protection of the order or its officers is waived by it, and the benefit will be held by a court of equity to belong to the beneficiary designated in the changed certificate. So that where the by-laws required the designation of the change of the beneficiary to be made on the back of the certificate, and it was impossible for the member to produce the certificate, as shown by his application and affidavit, and the officers issued a duplicate in all respects the same as the original except the difference in the names of the beneficiaries, it will not be held that the change was unavailing and invalid because the change was not indicated in writing on the back of either the original or duplicate, but that provision was for the protection of the order and its

officers, and its non-observance was waived, and the change entitled the substituted beneficiary to the benefit. [Disapproving Grand Lodge A. O. U. W. v. Ross, 89 Mo. App. 621.]

.Transferred from St. Louis Court of Appeals.

CIRCUIT COURT JUDGMENT REVERSED AND REMANDED (*with directions*).

*Walther & Muench* for appellant; *F. H. Bacon* of counsel.

(1) The deed of adoption could not be attacked in this, a collateral proceeding. Williams v. Carpenter, 35 Mo. 52; Brown v. Brown, 101 Ind. 340; Hannon v. Steinman, 9 Iowa 112; Railroad v. Land Co., 175 Pa. St. 95. The motive which may have prompted the making of the deed cannot be inquired into. Kemp v. N. Y. Exch., 34 App. Div. 175. (2) The beneficiary in a fraternal benefit certificate has no vested interest therein. Masonic Ben. Ass. v. Bunch, 109 Mo. 579; Wells v. Mut. B. Ass., 126 Mo. 637. (3) In the absence of any laws of the association prescribing particular formalities for a change of beneficiary, any clear, definite designation of a different beneficiary will suffice. Masonic B. Asso. v. Bunch, 109 Mo. 579; Gr. Lodge A. O. U. W. v. Childs, 70 Mich. 163; Isgrigg v. Schooley, 125 Ind. 94; Bacon on Ben. Soc., sec. 308a. (4) Where there is no adopted law of the order regulating the matter, a long-established custom is equivalent to a formally adopted law of the society. State ex rel. v. Gr. Lodge A. O. U. W., 70 Mo. App. 466; Angell & Ames on Corp., sec. 328; Davidson v. K. P., 22 Mo. App. 263. (5) The society may waive compliance with its laws. Gr. Lodge A. O. U. W. v. Reneau, 75 Mo. App. 409; St. Louis Pol. R. Assn. v. Strode, 103 Mo. App. 694; Schoneau v. A. O. U. W., 85 Minn. 349; Manning v. A. O. U. W., 86 Ky. 136; Titsworth v. Titsworth, 40 Kan. 571; Sup. Conclave v. Coppella, 41 Fed. 1; Allgemeier Bund

v. Adamson, 92 N. W. 786; Aid Soc. v. Lupold, 101 Pa. St. 111; K. of H. v. Watson, 64 N. H. 517; Martin v. Shibbings, 126 Ill. 387; March v. Sup. Cl., 144 Mass. 512; Adams v. Gr. Lodge, 105 Cal. 321; Schardt v. Schardt, 106 Tenn. 276; Anthony v. Asso., 158 Mass. 322; Splawn v. Chew, 60 Tex. 532; Pa. Rel. Co. v. Wolfe, 52 Atl. 247; Fisk v. Equitable Aid Union, 11 Atl. 84; Weber v. Ancient O. of P., 104 Mo. App. 729; Niblack on Benev. Soc., sec. 219; Bacon on Ben. Soc. (2 Ed.), sec. 430; Delaney v. Delaney, 175 Ill. 197; Police R. Asso. v. Tierney, 116 Mo. App. 447; Labey v. Labey, 61 L. R. A. 795. (6) Payment of assessments by beneficiary gives him no claim upon benefit. Masonic B. Asso. v. Bunch, supra; Fisk v. Equitable Aid Union, 11 Atl. 84; R. S. 1899, sec. 1417.

*Bass & Brock* for respondent.

(1) The statutes of this State applicable to fraternal insurance provide that any change of beneficiary or revocation of a certificate shall be done by written or printed notice to the association in manner and form provided for in its by-laws. Sec. 1417, R. S. 1899; Black on Interpretation of Laws, p. 273; Friedman v. Sullivan, 48 Ark. 213; King v. Inhabitants of Threlkeld, 4 Barn. and Ald. 229; King v. Inhabitants of Newark-upon-Trent, 3 Barn. & C. 59. (2) A contract between insured and respondent will be inferred as a matter of law from the fact that respondent paid the dues and assessments of insured's certificate with the knowledge and consent of insured for a period of thirteen years. Bush v. Bush, 81 Mo. App. 562; Sprague v. Sea, 152 Mo. 327; Voerster v. Kunkel, 86 Mo. App. 194; Hickman v. Hickman, 46 Mo. App. 496. (3) A bill of interpleader is a strictly equitable proceeding and the decree of the chancellor as to the disposition of the fund should be according to the equities of the case. Miller v. Ins. Co., 68 Mo. App. 19; Funk v.

Thomasson, 84 Mo. App. 490; Grand Lodge v. Reneau, 75 Mo. App. 402. (4) A beneficiary in fraternal insurance certificate, while not having vested interest in the fund, has such an interest as that she has a right to insist that in order to cut her out, the change of beneficiary should be made in the manner provided in the contract and that the member be sane at the time of the attempted change. Holland v. Taylor, 111 Ind. 121; Grand Lodge A. O. U. W. v. Frank, 94 N. W. 731; Brown v. Grand Lodge A. O. U. W., 57 Atl. 176; Rollins v. McHatton, 16 Col. 203; Mellows v. Mellows, 61 N. H. 131; Supreme Lodge v. Nain, 60 Mich. 15; Hotel Men's Mutual v. Brown, 33 Fed. 11. (5) The constitution, by-laws and certificate constitute the contract of insurance between a benefit society and its members. Grand Lodge A. O. U. W. v. Sater, 44 Mo. App. 445; Grand Lodge v. Elsner, 26 Mo. App. 108. (6) The validity of the substitution of a new beneficiary in place of one named in the original certificate must be determined by the terms of the certificate and of the charter and by-laws of the society. If these provide for the substitution of a beneficiary in a certain way, all other ways are excluded, and a substitution not in substantial compliance with the mode prescribed is invalid. Head v. Supreme Council, 64 Mo. App. 212; Coleman v. Supreme Lodge, 18 Mo. App. 189; Stewart v. Legion of Honor, 36 Mo. App. 330; Hammerstein v. Parsons, 38 Mo. App. 336; Hoffman v. Grand Lodge, 73 Mo. App. 47; Bacon on Ben. Soc., par. 218; Niblock on Ben. Soc., par. 161, 307; Grand Lodge A. O. U. W. v. Ross, 89 Mo. App. 621; Holland v. Taylor, 111 Ind. 121; Rollins v. McHatton, 16 Col. 203; Mellows v. Mellows, 61 N. H. 131; Hotel Men's Mutual v. Brown, 33 Fed. 11; Renk v. Herman Lodge, 2 Demarest (N. Y.) 409; McCarthy v. Supreme Lodge, 153 Mass. 314; Stephenson v. Stephenson, 64 Iowa 534; Olmstead v. Society, 37 Kan. 93.

(7) The Grand Lodge, A. O. U. W., being a fraternal benefit association, cannot, through its officers, waive the requirements of its own laws in this State as to the manner and form in which a change of beneficiary should be effected so as to divest the original beneficiary, for this would be in effect a "disbursement" of its funds and be contrary to the statute. Sec. 1408, R. S. 1899. (8) When a member of a benefit society voluntarily gives his benefit certificate to his beneficiary and she has paid dues and assessments and given financial aid to the member under the belief that she is to receive the fund under the certificate upon his death, he thereby waives his right to change the beneficiary. Under these circumstances, a court of equity will hold that the member has released his power to effect such a change and conveyed to his beneficiary a vested right to the benefit. Catholic Benevolent Legion v. Murphy, 65 N. J. Eq. 60; Leaf v. Leaf, 92 Ky. 166. (9) The member in the case at bar made a false affidavit for the purpose of obtaining the new certificate. Under these circumstances there can be no waiver of the by-laws as against the original beneficiary. To constitute a waiver by officers of the order, there must be actual knowledge of all the facts and an acquiescence in the failure to comply with the contract; otherwise there is no waiver as against the defendant, Bridget McFadden. Johnson County v. Lowe, 72 Mo. 637; Haysler v. Owen, 61 Mo. 270; Advance Thresher Co. v. Pierce, 74 Mo. App. 676; Mohney v. Reed, 40 Mo. App. 99. (10) When the member of a benefit society has voluntarily delivered his certificate to his beneficiary and there is no evidence to show any demand for its return, his affidavit that said "certificate is not under his control but is withheld from him" is false and the society does not waive the by-laws by issuing a new certificate naming a new beneficiary upon the false affidavit. The rule that the action of the Supreme Coun-

cil in issuing a new certificate is conclusive is based upon the idea that the affidavit states the truth. Such new certificate, issued under these circumstances, cannot give the new beneficiary any right of action against the society or affect the rights of the original beneficiary. Catholic Benevolent Legion v. Murphy, 65 N. J. Eq. 81; Royal Arcanum v. Tracy, 169 Ill. 123; McGrew v. McGrew, 93 Ill. App. 76, affirmed 190 Ill. 607. (11) The new certificate can have no effect in law or equity if made and issued as a result of undue influence upon the member, or while the member was suffering from an infirmity of mind, or as the result of any fraud practiced upon the member or the benefit society. Cason v. Owens, 100 Ga. 142; Onsby v. Supreme Lodge K. of H., 101 Tenn. 16; Catholic Benevolent Legion v. Murphy, 65 N. J. Eq. 60; Shuman v. Supreme L. K. of H., 110 Iowa 480; Sovereign Camp W. of W. v. Wood, 114 Mo. App. 471. (12) There was absolutely no consideration moving to the child, such as is contemplated in section 5248, Revised Statutes 1899, relating to the adoption of children. (13) When the adoption of a child is for the express purpose of changing beneficiary to said child, said adoption and change of beneficiary will not be upheld by the courts. (14) When the adoption is for the purpose of speculation and the hypothecation of the benefit by evading the law of the State and for the purpose of defrauding the original beneficiary, said adoption and change of beneficiary is ineffectual and contrary to the statute regulating these societies in this State. Sec. 1419, R. S. 1899.

WOODSON, J.—The plaintiff began this suit in the circuit court of the city of St. Louis by filing therein a bill of interpleader, alleging, in substance, that it was a fraternal beneficial organization, duly authorized to issue benefit certificates to its members; and that in the year 1886 Michael McFadden became a member

of the association, and that it issued to him a benefit
certificate for the sum of $2,000, payable to his wife,
Bridget McFadden, upon his death, upon certain con-
ditions stated in the bill. It then alleges that about
ten years after the issuance of this certificate McFad-
den had a falling out with his wife and he then had
that certificate cancelled and a new one issued in favor
of Mary O'Malley, an adopted daughter. McFadden
died in the year 1903, and both his widow and adopted
daughter presented claims to the association for the
$2,000, each claiming to be the legal owner thereof. The
bill then states that the interpleader did not know
which of the two really owned the fund, and asked per-
mission to bring it into court, and that the respective
claimants be required to interplead for the same. The
permission was granted and the money was deposited
in court, and they were ordered to interplead therefor.
Each of them filed their interplea, setting up their re-
spective claims to the money; and after the issues were
joined the cause was tried before the court, which re-
sulted in a finding and judgment for the widow, and the
daughter duly prosecuted her appeal to the St. Louis
Court of Appeals. The latter court reversed the judg-
ment of the circuit court with directions to repay Mrs.
McFadden all premiums she had paid on the certifi-
cate, with six per cent interest from the time each pay-
ment was made, and to pay the balance of the fund to
Mary O'Malley.

But as the opinion of the court was in conflict with
the opinion of the Kansas City Court of Appeals de-
livered in the case of Grand Lodge A. O. U. W. v. Ross,
89 Mo. App. 621, the cause was for that reason certi-
fied to this court.

We have very carefully read and considered the
opinion of the St. Louis Court of Appeals in this case,
and the opinion of the Kansas City Court of Appeals
in the Ross case, as well as the briefs and authorities

cited by learned counsel for the respective parties to this suit; and, after a very careful consideration, we have reached the conclusion that the opinion of the St. Louis Court of Appeals correctly decides the case, which we affirm in all particulars and adopt as the opinion of this court, which is as follows:

"Plaintiff, a fraternal beneficiary association, on September 12, 1886, issued to Michael McFadden, a member of Meta Lodge No. 19, of said association, a benefit certificate for the sum of $2,000, payable at the death of said Michael McFadden to his wife Bridget. About thirteen years prior to his death, which occurred April 7, 1903, Michael drove his wife and children from his home and thereafter lived separate from his wife, making his home most of the time with a married daughter until about the month of April, 1901. After this time he was taken care of by John O'Malley, father of appellant, Mary O'Malley. Early in the year 1901 McFadden sent the certificate by one of his daughters to his wife, with a message to her to the effect that he was having some trouble with some gentlemen who owed him money, and that if anything should happen to him she would have the certificate to protect herself and take care of her. The evidence shows that Bridget, out of her own funds, paid all the assessments levied against McFadden by the society until about January 1, 1901, and that she offered to pay assessments after January, 1901, but the lodge officers refused to accept her tenders. The amount paid by her in assessments was shown to be about $450.

"In March or early in April, 1901, the evidence is that Michael McFadden approached John O'Malley and represented to him that he had separated from his family and had no one to take care of him; that he was too old to work and that if something was not done, he would soon have to go to the poor house, and proposed to Mr. O'Malley to adopt Mary O'Malley, the

minor daughter of John, as his daughter and heir and designate her as the beneficiary in his certificate of insurance, if John O'Malley would take care of him the balance of his days. O'Malley assented to the proposition, and thereafter, to-wit, April 5, 1901, with the intent of designating Mary O'Malley as his beneficiary, McFadden made the following affidavit;

" 'The undersigned, Michael McFadden, being duly sworn, does depose and say that he is a Workman Degree Member in good standing in Meta Lodge No. 19, located in St. Louis, State of Missouri, that the number of his beneficiary certificate is 25609, that said beneficiary certificate is payable to his wife, Bridget McFadden, and was issued at St. Louis, Missouri, by the Grand Lodge of the Ancient Order of United Workmen of Missouri, on the 12th day of September, 1886.

" 'The undersigned further deposes and says that the said beneficiary certificate is not in his possession or under his control but is withheld from him.

" 'In consequence of the said detention and withholding beneficiary certificate, the undersigned does hereby make application for a  duplicate certificate, which he asks may be issued to him in the place of the original beneficiary certificate, above described, and as a condition necessary to the issuance of said duplicate, the undersigned Michael McFadden does hereby cancel and annul said original benefit certificate and relinquish all rights, benefits and claims that may at any time arise, either to him or his beneficiaries under the said original beneficiary certificate described at the outset, and directs that a new benefit certificate be issued to him in which payment shall be made to Mary O'Malley, bearing relation to me of adopted daughter —said new certificate to be then issued in lieu of the original which thereupon shall become null and void.'

"And on the same date executed and acknowledged the following deed of adoption:

" 'Know all men by these Presents, That I, Michael McFadden, of the city of St. Louis, in the State of Missouri, for good and valuable consideration to me moving, do hereby under the provisions of chapter 90, Revised Statutes of Missouri of 1899, adopt Mary O'Malley, daughter of John and Mary O'Malley, of the said city of St. Louis, as my own child, hereby granting unto her, the said Mary O'Malley, all the rights and privileges which she might or could enjoy were she my own child, and all the rights conferred upon adopted children by the laws of the State of Missouri.'

"On September 16th, 1901, Mary O'Malley executed the following promise and agreement:

" 'I promise and agree with my father, Michael McFadden, that I will from this time forward pay the assessments, dues, etc., which shall be payable by him as a member of Meta Lodge of the Ancient Order of United Workmen, when and whenever such assessments, dues, etc., become payable according to the laws and rules of said United Workmen. I further agree to pay to said McFadden during his life four dollars every week, such payments to be made on every Saturday. In consideration of my promise as above said McFadden shall cause the name of the beneficiary named in his certificate of membership in said United Workmen to be changed so that I shall be named as the beneficiary therein. And if I fail to pay said assessments, dues, etc., as aforesaid, and if I fail to pay said McFadden said sum of four dollars every week, as aforesaid, then I shall lose all my title as said beneficiary and said McFadden shall be at liberty to change the name of the beneficiary in said certificate and cause the name of someone else than me to be named as such beneficiary in said certificate.'

"On the same day, Michael McFadden made his will, by which he disinherited his wife and children and willed the proceeds of his certificate of insurance

(his only asset) to Mary O'Malley, his adopted daughter, and designated her as his sole beneficiary, and directed that the insurance be paid to her at his death. On the presentation of McFadden's affidavit of April 5, 1901, and the exhibition of the deed of adoption to the officers of the Superior Lodge of the association, a new certificate of insurance of the same number as the original (No. 25609) was on August 21, 1901, signed by Wm. H. Miller, Grand Master Workman and Henry W. Meyer, Grand Recorder, and was countersigned by the Master Workman and Recorder of Meta Lodge, sealed with the seal of the Lodge, and in this condition was delivered to Mr. McFadden. In the new certificate Mary O'Malley was described as the adopted daughter of Michael McFadden and was named as his beneficiary. The evidence is that O'Malley paid all the assessments after January, 1901, as well as all dues claimed by the association from McFadden. He testified that these assessments and dues and hospital and medical expenses paid out by him for McFadden, together with clothing and money furnished him, aggregated about $950. The evidence is that Mary O'Malley, after her adoption, continued to reside with her mother and was supported and maintained by her parents, and that McFadden contributed nothing toward her support.

"The laws of the order provide that members' children by legal adoption may be designated as beneficiaries. Law No. 185 of the order concerning the issuance of duplicate certificates is as follows:

" 'DUPLICATE CERTIFICATE.—When a beneficiary certificate shall be lost or destroyed, or it shall not be under the control of the member to whom it was issued, he may have a duplicate certificate issued, if he desires, upon making affidavit of the fact, upon a form furnished by the Grand Recorder, and executing a release to the Grand Lodge of all rights and benefits under the

original certificate. The same rule shall apply to the payment of beneficiaries who may not be able to produce the certificate, and as a further security the Grand Master Workman and Grand Recorder may require such other assurances, releases or indemnities, as may seem to the Grand Master Workman, Grand Recorder and Finance Committee necessary for the protection of the Grand Lodge.'

"Concerning the change of name of the beneficiary, Law No. 194 of the Order reads as follows:

" 'CHANGE OF BENEFICIARY.—Any member holding a beneficiary certificate, desiring at any time to make a new direction as to its payment, may do so by authorizing such change in writing on the back of his certificate in the form prescribed, attested by the recorder, with the seal of the lodge attached, and by payment to the Grand Lodge of the sum of fifty cents, but no change of direction shall be valid or have any binding force or effect until such change shall have been reported to the Grand Recorder, the old certificate, if practicable, filed with him, and a new beneficiary certificate issued thereon, and said new certificate shall be numbered the same as the old certificate; provided, however, should it be impracticable for the recorder to witness the change desired by the member, attestation may be made by a notary public or clerk of a court of record, seal to be attached in attest.'

"It was alleged by Mrs. McFadden that Michael McFadden at the time he executed the deed of adoption and made the affidavit above set forth was insane. This allegation was put at issue by the plea of Mary O'Malley, and there was evidence pro and con touching the sanity of Mr. McFadden at the time he executed said documents. The learned trial judge specially found that McFadden was sane and as his finding is supported by the greater weight of the evidence, we deem it unnecessary to further notice this issue.

"When McFadden died, both his widow, as holder of the original certificate, and Mary O'Malley, as holder of the new certificate, demanded payment of the association. The association filed its bill of interpleader in the St. Louis Circuit Court, deposited the $2,000, less $103 allowed it as costs and attorney's fees, and procured an order requiring the rival claimants to interplead for the fund, and was discharged. In compliance with the order to interplead, the rival claimants of the fund appeared in court and filed their respective pleas, and the issues made up thereby were submitted to the court, who, after hearing the evidence, found for Bridget McFadden and awarded her the whole of the fund. To this award Mary O'Malley appealed in the usual way.

"The evidence shows that Mr. McFadden without cause turned his wife out of doors about thirteen years prior to his death and thereafter wholly abandoned her; that in April, 1901, for no cause, he turned against both his wife and children, and being old and unable to work and having no means, he became apprehensive that he might become a public charge. To avoid the humiliation of becoming an inmate of the poor house, he approached John O'Malley and proposed to him that he would adopt his daughter, Mary, as his daughter and heir, and designate her as beneficiary in his certificate of insurance, if O'Malley would pay his assessments and maintain him during the remainder of his life. O'Malley accepted the offer and carried out the agreement. A deed of adoption was executed and a new certificate designating Mary O'Malley as beneficiary was issued by the association.

"Section 1417, Revised Statutes 1899 (Laws 1897, p. 135), provides that no contract between a member of a fraternal beneficiary association and his beneficiary, that the beneficiary or any person for him, shall pay such member's assessments and dues, shall give

the beneficiary a vested right in such certificate, or in the benefit derived therefrom, or deprive the member of the right to change the name of the beneficiary, or revoke the certificate on written notice to the association in the manner and form provided for by its by-laws. Under the provision of this section, Mary O'Malley acquired no vested interest in the certificate of insurance by virtue of the contract entered into and performed by her father, John O'Malley, to pay McFadden's dues and assessments and to maintain him during the rest of his natural life. The original contract between Mr. McFadden and the association was entered into prior to the passage of the Act of 1897, and as that law can have no restrospective operation (Sec. 15, Bill of Rights) the interest of Mrs. McFadden, if she acquired any, either in law or in equity, was not affected by the Act of 1897, but is governed by the law as it stood prior to the enactment of section 1417, supra.

"The original certificate of insurance was issued September 12, 1886. The law then in force (Art. 10, ch. 21, R. S. 1879), neither expressly prohibited nor permitted a member of a fraternal beneficiary society to change the name of his beneficiary. Section 972 of the article, the only section defining the powers and rights of these associations, authorizes them, when incorporated under the provisions of the article, to provide for the relief and aid of families, wives, orphans and other dependents of their deceased members, or for assisting members of such societies or associations. In the revision of 1889, this section as amended appears as section 2823 and provides that any beneficiary, under a certificate issued by any fraternal beneficiary association, may pay the dues and assessments charged against such member on account of his membership. This section also expressly authorizes the issuance of beneficiary certificates for the benefit of the classes it names, but it neither expressly authorizes nor

prohibits a change of name of the beneficiary. Section 2831, Revised Statutes 1889, requires that every corporation under the act, including fraternal benefit societies, shall make by-laws for its government and support, followed by a proviso that such by-laws shall be conformable to its charter and shall not import or limit any provisions thereof or enlarge its focus. It is the universal law that a beneficiary named in a fraternal benefit certificate has no vested interest therein. [Masonic Ben. Assn. v. Bunch, 109 Mo. 560; Hofman v. Grand Lodge B. L. F., 73 Mo. App. 47; Grand Lodge A. O. U. W. v. Reneau, 75 Mo. App. 402; Sup. Council L. of H. v. Neidlet, 81 Mo. App. 598; Morton v. Royal Tribe of Joseph, 93 Mo. App. 78; Carpenter v. Knapp, 101 Ia. 712, 38 L. R. A. 128; Shipman v. Protected Home Circle, 174 N. Y. 398.]

"The designation of a beneficiary in a certificate issued by a fraternal beneficiary association is but a present expression of the member's will, revocable at any time, and unless there is to be found either in the laws of the State where the association was incorporated, or in its charter or by-laws, or in the terms of the certificate itself, some provision prohibiting or restraining the right of the member to change the name of the beneficiary, he may do so with the same freedom as he may change the name of a legatee in his will by the making of a new will before the first one takes effect; provided, that where the rules and regulations of the association provide a specific method of changing the name of the beneficiary, such rules and regulations must be substantially complied with in order to effect a new designation. The laws of the association read in evidence expressly provide for the making of a new designation.

"The question then arises, first, whether or not Mrs. McFadden acquired such an equity in the original certificate as to estop her husband from making a new

designation; and, second, if she did not acquire such equity, was the certificate the result of a valid exercise of the right of Mr. McFadden to change the name of his beneficiary?

"In Smith v. Nat. Ben. Society, 123 N. Y. 85, 9 L. R. A. 616, it was held that the rule that a member of a beneficiary association might change the name of his beneficiary without the consent of the beneficiary, does not prevent the making of a contract between the parties by which a vested interest would pass to the designated beneficiary, which will compel the society to recognize him as the one entitled to the funds.

"In Maynard v. Vanderwerker, 30 Abbott (N. C.) 134, it is held: 'Although ordinarily the designation of a beneficiary in the certificate of a member of a fraternal beneficiary society is in the nature of an inchoate or unexecuted gift, revocable at any time by the donor, such member may by contract with the beneficiary by the terms of which the latter is to pay the assessments and receive the benefits, vest an interest in the beneficiary and deprive himself of the power of making a change in the designation of the beneficiary; and where such contract has been performed on the part of the beneficiary by paying the assessments levied, such beneficiary is entitled to a death benefit as against a third person whom the member has attempted to substitute as beneficiary.' On the authority of this case Bacon says: 'If, under an agreement with a member, the beneficiary pays the assessments, the latter may acquire such a vested right as will prevent a change.' [1 Bacon on Ben. Soc. & Life Ins. (3 Ed.), sec. 295.] And in Leaf v. Leaf, 92 Ky. 166, it was held that where the wife to whom the original certificate was issued kept it alive by paying the assessments out of her own funds and surrendered property to the husband upon the faith that she was to have the fund, she acquired a superior equity to all others which could not be de-

feated by the husband by making a new designation according to the by-laws of the order.

"In Jory v. Sup. Council, 26 L. R. A. 733, it was ruled that the mere payment of dues and assessments by the beneficiary did not give him a vested interest in the certificate.

"There is no evidence of any agreement between McFadden and his wife that she should pay his assessments or that she surrender to him anything of value in consideration that he would have her designated as his beneficiary. All that appears is that she paid the assessments and that early in the year 1901 he sent her the certificate. Granting that from these facts a tacit agreement might be inferred that she should pay the assessments in consideration of the fact that he would name her as his beneficiary, under the ruling in Masonic Ben. Assn. v. Bunch, 109 Mo. 560, wherein it was held that the mere payment of the assessments by the beneficiary under an agreement with the member that he should do so gave the beneficiary no such equity under the certificate as to estop the member from making a change in the name of his beneficiary, we hold that Mrs. McFadden, by paying the assessments, did not acquire such an equity in the certificate as to estop her husband from exercising his right to make a new designation and that the designation of Mary O'Malley as beneficiary entitled her to the fund, provided the change was effected in substantial compliance with the regulations of the association.

"The laws of the order provide that when a beneficial certificate is lost or destroyed, or is not under the control of the member or his beneficiary after his death, he may have a duplicate certificate issued upon making affidavit to the facts and by executing a release of all his rights and benefits under the original certificate. The affidavit made by McFadden was in compliance with this law of the Order and entitled him to a dupli-

cate certificate. A new certificate was issued to him, but it was not a duplicate of the original one, for the reason that Mary O'Malley was designated as beneficiary in the new certificate, whereas Bridget McFadden was the beneficiary named in the original certificate. A duplicate has been judicially defined to be an original instrument reproduced, not a new agreement, but merely written evidence of the lost instrument to take its place. It must be the same in all other respects as some other instrument from which it is distinguishable. [State ex rel. Graef v. Forest Co., 74 Wis. 610; Bank v. Farnsworth, 38 L. R. A. 843; Railroad v. Heidenheimer, 82 Tex. 195; Nelson v. Blakey, 54 Ind. 29; McCuaig v. City Sav. Bk., 111 Mich. 356.]

"Law 194 of the association provides that a member desiring at any time to make a new designation as to its payment may do so by authorizing such change in writing on the back of the certificate in the form prescribed and attested by the recorder with the seal of the lodge attached, to be approved by the Grand Recorder, the old certificate, if possible, to be filed with him and the new certificate issued thereon. The old certificate was not in the possession of McFadden and hence he could not comply with the strict requirements of this law. But it is contended by appellant that the spirit and intent of the law was fully complied with; that it would have been a useless ceremony to have first issued a duplicate certificate to McFadden and then for him to have authorized the change of his beneficiary on the back of the duplicate certificate and to have a new certificate issued; that substantially all this was accomplished by McFadden's affidavit and cancellation and relinquishment of all benefits and claims on the original certificate. Those laws of the order were made primarily for the benefit of the association, to prevent imposition upon it and a conflict of claimants, and as the beneficiary

has no vested rights in the certificate, it is competent for the order to waive a strict compliance of such regulations as are solely for its own protection. [2 Bacon on Ben. Soc. (3 Ed.), sec. 430; Grand Lodge A. O. U. W. v. Reneau, 75 Mo. App. 409; Manning v. A. O. U. W., 86 Ky. 136.]

The main question is, did the member succeed in expressing his intention to change his beneficiary to the satisfaction of the society and in substantial compliance with the laws of the order? He did not have the original certificate, and could not therefore authorize a change in writing on the back of it, nor could he surrender it to the Grand Recorder, but he did authorize a change of the name of the beneficiary in writing and he effectually relinquished all claims to the original benefit certificate. His relinquishment was as effectual as if he had surrendered the certificate with the proper indorsement thereon to the Grand Recorder. He did all that was in his power to do under the circumstances to make a new designation and to relinquish all benefits of the original certificate. He did what he had a lawful right to do and what the respondent could not prevent him from doing, and which, when done, deprived Mrs. McFadden of no vested right or interest. What he did was, under the circumstances, in strict compliance with the laws of the order. The variation from the forms prescribed by the laws of the order was made by the grand officers of the association, not by the insured. Under these circumstances, it would be a hard ruling to hold that having done all he could do in the first instance to designate a new beneficiary, all the laws of the order required him do, his will should be defeated for the reason the supreme officers of the order on whom he had a right to rely in the issuance of a new certificate, waived a strict compliance with one of the rules of the order.

"In Lahey v. Lahey, 61 L. R. A. 795, following the

case of Supreme Conclave, etc., v. Cappella, 41 Fed. 1, it was held that: 'The general rule that the insured is bound to make such change of beneficiary in the manner pointed out by the policy and by-laws of the association is subject to three exceptions:

" '1st.   If the society has waived a strict compliance with its own rules, and, in pursuance of a request of the insured, to change his beneficiary, has issued a new certificate, the original beneficiary will not be heard to complain that the course indicated by the regulations was not pursued.

" '2d.   If it be beyond the power of the insured to comply literally with the regulations, a court of equity will treat the change as having been legally made.

" '3d.   If the insured has pursued the course pointed out by the laws of the association and has done all in his power to change the beneficiary, but, before the new certificate is actually issued, he dies, a court of equity will treat the certificate as having been actually issued.'

"In Isgrigg v. Schooley, 125 Ind. 94, the holder of the certificate in a benefit society, the by-laws of which required that when a member desired to change his beneficiary, he should surrender the original certificate, it appeared that the beneficiary originally named had been the member's wife who had abandoned him and refused to give up the certificate. The insured complied with all the requirements of the laws of the order in respect to the change of the name of the beneficiary except the surrender of the original certificate and assigned its loss as an excuse when a new certificate was issued. After the death of the member, the court held that the acts of the deceased constituted an equitable change in beneficiary. Nally v. Nally, 74 Ga. 669; Marsh v. Sup. Council, 149 Mass.

213 Sup—19

512, are parallel cases, and this doctrine was recognized by us in St. Louis Police Relief Assn. v. Strode, 103 Mo. App. 694, and National Amer. Assn. v. Kirgin, 28 Mo. App. 80.

"In Titsworth v. Titsworth, 40 Kan. 571, it was held: 'Where the association issues a certificate or changes the beneficiary on the application of a member, all questions as to whether it was done or not in accordance with the rules and regulations is concluded.' While this case seems to be opposed to current authority, it serves to mark the distinction in respect to the observation of the regulations the courts have drawn between cases where a new certificate designating a new beneficiary has been issued and the cases where the member has made application for a change of his beneficiary, but the society either failed to act upon the application or refused to make the change. In the former class, the courts generally hold that a non-observance of such of the regulations as are for the sole protection of the society may be waived by it, and that if the essentials of the regulation have been substantially complied with the certificate will be held valid. In the latter cases, the general rule seems to be that the member must have complied with the regulations and done all that it was in his power to do to effect the change, to authorize a court of equity, after his decease, to treat the change as having been made.

"But the Kansas City Court of Appeals, in Grand Lodge A. O. U. W. v. Ross, 89 Mo. App. 621, on a state of facts not distinguishable from the facts in the case at bar, held that the substitution of the new beneficiary was ineffectual and awarded the fund to the beneficiary named in the original certificate. In support of this ruling, the court cited Coleman v. Knights of Honor, 18 Mo. App. 189, and Head v. Sup. Council, etc., 64 Mo. App. 212.

"In the Coleman case the member gave the society a written notice of his desire to change the name of his beneficiary. The society took no action on this notice and issued no certificate. On the death of the member, the society paid the fund to the beneficiary named in the original certificate. Suit was brought by Coleman, claiming to be entitled to the fund as assignee of the original certificate. The society had adopted specific rules and regulations in respect to the designation of a new beneficiary, none of which were complied with, and the court very properly held the attempted assignment of the benefit was of no effect.

"In the Head case, the by-laws of the order provided: 'Sec. 162. Every member, at his initiation into the order, shall have a benefit certificate issued to him. Each member may enter upon his application the name or names of the members of his family, or those to whom he desires the benefit paid, and they shall be entered in the benefit certificate according to said direction. A member may at any time, when in good standing, change his beneficiary upon complying with the requirements hereinafter provided, and upon surrender of his benefit certificate and payment of a fee of fifty cents. Brothers desiring a change of beneficiary shall make application to the branch for its consent to the change, which application shall be in writing, and read at a regular meeting of the branch, and deferred for branch action to the next regular meeting, when, if three-fourths of those present approve of the change as requested, the change shall be made by the supreme secretary upon receipt of the benefit certificate and a fee of fifty cents, accompanied by a certified copy of the branch action on said application; provided, that, by the unanimous consent of the meeting at which the application for the

·change is first read, action may be had at said meet-.ing.'

"The application of Ryan, the member, on which the new certificate was issued was as follows:

St. Louis, February 8, 1894.

To The Supreme Secretary, Catholic Knights of America.

Dear Sir:—I hereby request that my benefit certificate in your order be changed from my wife, Mary Ryan, who is dead, to John J. Head, pastor of the Annunciation Church, St. Louis, Mo. I am a member in good standing of Branch 92, Catholic Knights of America.                                                     his

WILLIAM X RYAN
                                                    mark

Witness: James J. Brady; Wm. Lawson.

"On this state of facts the court said: 'It is obvious that the method adopted by plaintiff and Ryan to effect a change of beneficiaries was in no respect a compliance with section 162, supra, of the by-laws. No application was made to the branch lodge, and no notice was given to it or to defendant of the desired change. Counsel for plaintiff concedes this.'

"Neither of these cases is authority for the ruling in the Ross case, and it seems to us that the Ross case is out of line with the best considered cases of this and other jurisdictions. [Authorities, supra.]

"We think that Mr. McFadden substantially complied with the regulations of the association providing for a change in the name of his beneficiary, and that the officers of the association in issuing the new certificate violated no rule or law of the association, and we think the new certificate, when issued, became an effective and binding contract, and that McFadden and the association, being the only persons who had any vested interest therein, had the right to waive a mere :formality.

"But we do not think that Bridget McFadden should be turned out of court without any relief. With her own means she kept the insurance alive for twelve or thirteen years by paying the assessments thereon, and it would be a gross injustice not to reimburse her out of the fund for the money thus expended. On principles of equity she is entitled to so much of the fund as will make her whole. [Leaf v. Leaf, 12 Ky. L. Rep. 47.]

"Our conclusion is that the judgment of the circuit court should be reversed and the cause remanded with direction that out of the fund paid into court, the court award Bridget McFadden a sum sufficient to reimburse her for all assessments and dues paid by her to the association, together with six per cent interest thereon from the date the fund was paid into court, and that the court award to Mary O'Malley the balance of said fund; each party to pay one-half of the costs that have or may accrue in the circuit court."

It is therefore ordered that the judgment of the circuit court be reversed and the cause remanded with directions to enter judgment in accordance with the mandate of the St. Louis Court of Appeals.

All concur, except *Valliant, P. J.,* absent.