BROTHERHOOD OF RAILROAD TRAINMEN, PLAINTIFF, v. RALPH L. ADAMS, APPELLANT, AUGUSTA D. ADAMS, RESPONDENT.*

Kansas City Court of Appeals. March 5, 1928.

*Corpus Juris-Cyc References: Appeal and Error, 4CJ, section 2573, p. 675, n. 62; Contracts, 13CJ, section 19, p. 251, n. 31, 34; Mutual Benefit Insurance, 45CJ, section 44, p. 58, n. 35; section 134, p. 166, n. 51, 52; section 162, p. 203, n. 65; section 163, p. 208, n. 16; section 167, p. 213, n. 56; p. 214, n. 62.

*Ralph L. Adams, pro se* and *J. Francis O'Sullivan* for appellant.

*O. H. Stevens* and *E. W. Ahmann* of counsel.

*John T. Harding, David A. Murphy* and *R. C. Tucker* for respondent.

FRANK, C.—H. A. Adams, during his lifetime, was a member of the Brotherhood of Railroad Trainmen, and took out a benefit certificate in said order for $1875, payable at his death to his then wife, Minnie C. Adams, from whom he was later divorced, prior to his marriage to respondent, Augusta D. Adams. On June 21, 1912, at his request, and in compliance with the rules and by-laws of the brotherhood, the beneficiary in said benefit certificate was changed from Minnie C. Adams, his former wife, to Ralph Adams, his son. H. C. Adams died on January 28, 1926, and when proofs of death, accompanied by the benefit certificate were delivered to plaintiff brotherhood, there appeared on the back of said certificate the following,

"To the Grand Secretary and Treasurer of the Brotherhood of Railroad Trainmen:

"I hereby revoke my direction as to the payment of the within certificate, and now request and direct said payment in the event of my death, to be made to Ralph L. Adams—son and Augusta D. Adams —wife, whose relation to me is that of son and wife and whose residence is Kansas City, Missouri, and Omaha, Nebraska.

"Witness my hand and seal this 1st day of July, 1922.

"(Seal)　　　　　　　　(Signed)　　　H. A. ADAMS.

"Attest ............................... Secretary.

"This certificate transferred on the Books of the Grand Lodge in accordance with the last above request and direction this — day of ——, 19—.

"Witness my hand and seal of the Grand Lodge.

" ............................. Grand Sec'y and Treas.''

Ralph Adams, son of deceased, claimed the entire proceeds of the policy. Augusta D. Adams, wife of decedent, claimed one-half thereof. Plaintiff, being willing to pay the proceeds of the policy to the rightful claimant, filed its petition in the nature of an interpleader, asking that claimants be ordered to interplead. The prayer of plaintiff's petition was granted, the proceeds of the policy was paid into court and plaintiff was discharged. Each of the claimants filed their separate interpleas, Ralph L. Adams, claiming the entire fund, and Augusta D. Adams, respondent claiming one-half thereof. Each of the claimants filed their separate motion for judgment on the pleadings.

The trial court after hearing said motions, overruled the motion of appellant Ralph Adams and sustained the motion of respondent, Augusta D. Adams, and rendered judgment giving to each claimant one-half of the proceeds of said policy, each claimant to pay one-half of the costs. Ralph Adams appealed.

The petition of plaintiff alleges all the facts heretofore stated. In addition the position shows that plaintiff is a voluntary, unincorporated association organized and existing under the laws of the State of Ohio, as a fraternal benefit association; that the constitution, laws and by-laws of plaintiff are a part of each benefit certificate issued to a member and the by-laws in force and applicable to the certificate in question are as follows:

"Upon the death of a member in good standing, the person or persons named in the beneficiary certificate of the deceased member, if living (except as otherwise provided in Sections 62 and 63 of this Constitution), shall be entitled to receive from the Beneficiary Fund of the Brotherhood the sum of the beneficiary certificate, held by him—"

"Sec. 62. Any member desiring to transfer his beneficiary certificate shall fill out the printed transfer on the certificate and sign his name thereto, and send the same to the General Secretary and Treasurer, through the secretary of a lodge of the Brotherhood. All transfers of beneficiary certificates shall be made upon the books of the Grand Lodge under the direction of the General Secretary and Treasurer, and any and all transfers made in any other manner shall be null and void. It shall be the duty of the General Secretary and Treasurer, immediately upon its receipt, to certify to such transfer in the form provided therefor in the certificate."

"Sec. 63. Each beneficiary certificate shall be in all respects deemed to be made under, and to be interpreted and construed in accordance with laws of the State in which the Grand Lodge has its headquarters."

The pleadings filed by Augusta D. Adams admits as true and adopts all facts alleged in plaintiff's petition except the by-laws of

plaintiff. She then alleges that the act of plaintiff in paying the proceeds of said policy into court and disclaiming any interest therein was a waiver of all provisions of the by-laws relative to a change of beneficiary. She also alleges that, H. A. Adams, prior to his death intended to and did transfer one-half interest in said benefit certificate to her and that said transfer was endorsed on the back of said certificate as alleged in plaintiff's petition.

The pleadings of appellant Ralph L. Adams, admits as true and adopts all of the facts alleged in plaintiff's petition.

Respondent and appellant both plead decisions of the Ohio courts which we will notice later.

Appellant's first contention is that the benefit certificate in suit must be interpreted and construed in accordance with the laws of the State of Ohio. This contention is bottomed on the premise that the pleadings show that the Grand Lodge issuing the certificate was domiciled in the State of Ohio, and the by-laws which are an integral part of the benefit certificate, provides that such certificate shall be in all respects deemed to be made under, and to be interpreted and construed in accordance with the laws of the State in which the Grand Lodge has its headquarters.

The first question presented by this contention is the right of the parties to contract that the laws of Ohio shall govern the interpretation and construction of the contract.

It is well settled law that parties to a contract may agree that such contract will be governed by the laws of a certain State or country, although the parties may not be domiciled there when the contract is made, and such contracts will be recognized and enforced in other States, although contrary rules of law may prevail in the State where the contract is called in question.

Speaking to a like question in Fidelity Loan Securities Co. v. Moore, 280 Mo. 315, 217 S. W. 288, the Supreme Court of this State, speaking through GRAVES, Judge, said,

"The parties had the right to contract, and to agree in such contract that the laws of Texas should govern their contract. This intention of the parties will be carried out by the courts, when they are called upon to enforce the contract. In other words, it is a vital part of the contract. The rule is thus stated in 9 Cyc., pages 665 and 666."

"Where the parties have expressly provided that the contract shall be governed by the law of a particular country this intention will as a rule be carried out by the courts. Thus where two persons make a contract in England, but by its very terms it is provided that it shall be governed by the laws of Scotland, the law of Scotland then becomes the proper law of the contract, and the law by which it is to be interpreted and its legality decided. Parties may substitute the laws of another place or country than that where the contract is entered into, both in relation to the legality and extent of the original obligation,

and in relation to the respective rights of the parties, for a breach or violation of its terms. This is part of the *jus gentium*, and is enforced *ex comitate*, when the enforcement of the contract is sought in the courts of a country governed by a different rule than the local or adopted law of that contract.''

The parties to the benefit certificate having contracted that the certificate should be interpreted and construed in accordance with the laws of Ohio, the contract and the acts of the parties thereunder must be interpreted in accordance with such laws.

The vital question in the case is whether or not the facts disclosed by the pleadings, when construed in the light of the laws of the State of Ohio, worked a change of beneficiary from Ralph L. Adams, the beneficiary named in the policy to Ralph L. Adams and Augusta D. Adams.

The by-law relative to a change of beneficiary or transfer of benefit certificate is as follows:

''Sec. 62. Any member desiring to transfer his beneficiary certificate shall fill out the printed transfer on the certificate and sign his name thereto, and send the same to the General Secretary and Treasurer, through the secretary of a lodge of the Brotherhood. All transfers of beneficiary certificates shall be made upon the books of the Grand Lodge under the direction of the General Secretary and Treasurer, and any and all transfers made in any other manner shall be null and void. It shall be the duty of the general secretary and Treasurer, immediately upon its receipt, to certify to such transfer in the form provided therefor in the certificate.''

The rule in Ohio governing the change of beneficiary in a certificate issued by a beneficial association is stated in Charch v. Charch, Exr. et al., 57 Ohio St. 561, 49 N. E. R. 408, in the following language:

''When a member of a beneficial association, organized under section 3830, Revised Statutes, has caused the beneficial certificate, issued by the association upon his life, to be made payable to his wife, such member cannot change the beneficiary except in a mode pointed out by the by-laws of the association.''

In Anna Early v. James M. Early and Supreme Tent, K. O. T. M., 23 Ohio, Circuit Court Reports 618, the court said:

''When the society has accepted the surrender of the certificate from the member and issued a new one payable to a new beneficiary, or when the society has actually changed the beneficiary at the request of a member, all questions as to whether the manner and mode of changing beneficiaries, as provided in the contract have been followed, are concluded and absolutely disposed of, but where the society did not, during the lifetime of the member, agree upon a change of beneficiary, where the original contract is in existence and the right under it has accrued to someone, the original beneficiary will be heard to insist that he is entitled to the proceeds of it, because

the power of the appointment of another person in his stead was not made by the member, one of the parties to it, according to its provisions. To this extent and no further this rule applies that when the mode of changing the beneficiary is specified in the contract, it must be substantially followed.''

Other Ohio decisions cited by appellant are to the same effect.

Respondent cites an Ohio decision, Abernathy v. Benefit Association, 19 O. C. C. (N. S.) 184, whereat the court said,

''Where a mutual benefit association pays into court the fund due the beneficiary of one of its deceased members with the statement and asks the court to determine to which claimant it shall be paid, the fund will be ordered paid to the beneficiary clearly intended by the deceased member although by irregular designation, circumstances over which he had no control and his death prevented a change of beneficiary strictly in accord with the rules of the association.''

Other Ohio decisions are cited by both appellant and respondent holding that if a change of beneficiary is actually made in substantial compliance with the by-laws of the association, and to the satisfaction of both the association and the assured the change is valid.

The rule to be deduced from the Ohio decisions above cited is that a change of beneficiary, unless consummated to the full satisfaction of both parties to the certificate, in order to be valid, must be made in compliance with the by-laws of the order, unless circumstances over which the policyholder had no control and his death prevented him from making a change of beneficiary in strict conformity with the by-laws and rules of the association.

How does the attempted change of beneficiary in the case at bar square with the rules as announced by the Ohio Courts? The contract provides that a change of beneficiary shall be made by the member filling out and signing the transfer on the certificate and sending it, through the secretary of the local brotherhood, to the General Secretary and Treasurer who shall make such change on the books of the Grand Lodge. The contract further provides that a change made in any other manner is null and void.

This case was determined on a motion for judgment on the pleadings and we must look to the pleadings for the facts. The pleadings show that after the certificate holder's death, when the certificate and proofs of death were delivered to the association, it discovered for the first time that the transfer on the certificate was filled out and signed by the policyholder, directing a change of beneficiary from Ralph L. Adams to Ralph L. Adams and Augusta D. Adams. This transfer was filled out and signed almost four years before the policyholder's death. It was signed on July 1, 1922, and he died on January 28, 1926. He certainly had possession of the certificate when he filled out and signed the transfer in 1922, and there is no facts pleaded showing that he did not continue in possession of it from that time until the

date of his death in 1928. He had almost four years after the transfer was filled out and signed in which to send it to the Grand Lodge and complete the change in accordance with the rules of the association. There are no facts pleaded showing that circumstances over which he had no control and his sickness and death prevented him from so doing. It is not shown that he delivered the policy to either his wife or son or to any one else. No facts pleaded which even tend to show that decedent could not have, if he had so desired, completed the change of beneficiary in at least substantial compliance with the by-laws of the association. Respondent contends that the transfer on the back of the policy, signed by decedent, clearly shows that he intended to change the beneficiary and that his intent should control. It could be contended with equal force, that after signing the transfer, he changed his mind, because he kept the policy in his possession for almost four years without taking any steps to complete the change in accordance with his contract, or otherwise indicating that he desired to make it.

In view of the facts pleaded and in the light of the law as declared by the courts of Ohio, we hold that the attempted change of beneficiary was invalid because not made in substantial compliance with the by-laws of the association.

Respondent contends that the construction of the contract relative to a change of beneficiary is purely a question of procedure and practice and is, therefore, governed by the laws of Missouri. Frakes v. Brotherhood of Locomotive Fireman, 204 S. W. 26; Henderson v. M. W. A., 183 Mo. App. 186, 146 S. W. 102, and Jackson v. Brotherhood of American Yeoman, 167 Mo. App. 19, are cited in support of this contention.

Respondent's contention is that the act of association in paying the proceeds of the policy into court, disclaiming any interest therein and pleading a willingness to pay the money to the proper party, is a waiver of the provisions of the association's by-laws relative to the manner in which a change of beneficiary may be made.

There is no question but that the provisions of the association's by-laws relative to a change of beneficiary are for the benefit of the association and may be waived by it. The cases cited by respondent so hold. The vital question is, what effect, if any, does such waiver have on the vested rights of parties claiming under the rules and by-laws of the association.

In Henderson v. M. W. A., supra, the facts in judgment were that one Albert A. Merchant held a policy in defendant association payable to his mother. Shortly before his death he desired to change the beneficiary in his policy from his mother to his wife and son. He did not have the policy and could not get it. He requested his friend to prepare, and he signed, a written request that such change be made. This request was delivered to the local lodge of defendant. On account

of rival claimants to the proceeds of the policy, defendant paid the money into court and asked that claimants be required to interplead. In disposing of the case the court said:

"At the time the deceased undertook to make the change, the certificate was not in his possession or under his control, and he could not strictly comply with the required formality mentioned, but he did all he could under the circumstances to effectuate his purpose in executing the writing designating his wife and son as his beneficiaries. As against the company this was not sufficient, but as it does not insist upon a strict compliance with the by-laws, and has paid the money into court and asked that the court determine who shall receive the benefits in order that it may be protected from the adverse claims of the plaintiff and interpleaders, it thereby waived a strict compliance with said by-laws. The law is that such by-laws are made solely for the benefit of such organization, and as the plaintiff, the beneficiary named in the certificate, had no vested interest in the benefits she can have no good reason to complain on the ground that the by-law in question was not strictly complied with."

We do not interpret this case as holding that defendant's waiver of the by-laws by payment of the proceeds of the policy into court, in any way affected the rights of the claimants to the fund. It is true such waiver prevented the defendant from asserting that there was no valid change of beneficiary, but the court was free to determine that question upon a proper application of the law to the facts presented. As we read the case, the court upheld the change of beneficiary, not on the ground that the defendant waived the provisions of the by-laws, but because the policyholder, under the circumstances shown, did all he could to make the change of beneficiary. The decision, we think, would have been the same if the defendant had not waived the provisions of its by-laws. The correct rule under such circumstances is well stated in Walsh v. Trust Co., 148 Mo. App. 179, 192, in the following language:

"We hold that while the form in which the change of beneficiary in the case at bar is not strictly in accordance with the rules of the order, it is substantially as required. All the objection the order made to it was to its form; so far as the order is concerned, it does not now stand on that, but declares its willingness to pay the fund to whomsoever the court shall find is entitled to it. But the failure of the order to insist on the form cannot and does not bind parties claiming under the rules of the order. They have a right to insist and claim as is here done that the change was not made as provided by those rules, which are a part of the contract. The intention of the member to make the change and the change he intended are very clearly set out. That death intervened before he could conform to the rules and express that intention formally should not and will not prevent a court of equity from enforcing that intent and making it effective,

the member having done all that was within his power to carry out his intention. He did not have the certificate on which the form of change of beneficiary was printed; nor did the secretary of his camp have one. Whether the policy was withheld by his wife is not material. Walsh did not have it with him at the hospital. It was not in his possession. So he did all he could do under the circumstances.''

The law is well settled that the beneficiary named in a fraternal benefit certificate has no vested interest therein. The insured may change his beneficiary at any time he so desires. [Alexander v. Sovereign Camp Woodmen of the World, 193 Mo. App. 411, 188 S. W. 2; Tuite v. Supreme Forest Woodmen Circle, 193 Mo. App. 819; Jackson v. Brotherhood of American Yeoman, 167 Mo. App. 19, 150 S. W. 871; Masonic Benefit Ass'n v. Bunch, 109 Mo. 560, 579.] It is equally well settled that the interest of such a beneficiary becomes vested immediately upon the death of the insured.

The plaintiff, association could not by its voluntary act of depositing the fund in court and disclaiming any interest therein, change or destroy the rights, if any, of either claimant to the fund, because such rights became definitely fixed and vested before the money was deposited and could not be changed by the voluntary act of the association and without the consent of the claimant.

Respondent cites the case of Frakes v. Brotherhood of Locomotive Fireman, supra, decided by this court, in support of her contention. In that case Frakes held a benefit certificate payable at his death to his mother. He became sick and concluded to change his beneficiary from his mother to his wife. He filled out the blank on the back of his certificate. The blank thus filled out read as follows:

''I hereby direct that in lieu of this certificate a new certificate be issued to me for the sum of $1500, and in the event of my death while said new certificate is in force and effect I hereby direct that the benefits arising therefrom be payable to Gladys Frakes related to me as wife.''

This was signed and acknowledged and delivered to his wife. Shortly thereafter he died.

After his death his mother and his widow separately claimed the money due on the certificate. The society, being willing to pay the proper party, paid the money into court and asked that claimants be required to interplead. The constitution of the society provided that no change of beneficiary should be valid until the certificate had been received by the general secretary and cancelled and a new certificate issued wherein the new designation of beneficiary should appear. At the trial, it was urged that the attempted change of beneficiary was invalid because of non-compliance with the constitution of the association. The court held that the act of the association in paying the money into court and pleading its willingness to pay the proper claimant, was a waiver of the provision of the constitution relative

to a change of beneficiary, and then disposed of the case in the following language:

"The facts in the case showing that the deceased member intended to substitute his wife as beneficiary, and made an effort to do so, and thought he had done so, applied to the law we have stated, makes clear that the trial court properly disposed of the case, and the judgment will be affirmed. All concur."

This case seems to support respondent's contention. If the court intended to hold that the change of beneficiary was valid because the association, after the death of Frakes, waived the provisions of its constitution relative to such change, the decision is unsound and should not be followed. The rights of the lawful beneficiary became definitely fixed and vested at the very moment of Frakes' death. In other words upon the death of Frakes the insurance belonged to either the mother or the wife. To say that the association could thereafter, by its voluntary act and without the consent of the lawful beneficiary change or destroy her vested right to the insurance, does not accord with sound reasoning. If such waiver had occurred during the lifetime of deceased and before the beneficiaries' rights became vested, a different question would be presented.

The rule in Missouri governing the change of beneficiaries in a benefit certificate may be thus stated: Where the insured does all he can do, under the circumstances in which he is placed, in an attempt to change his beneficiary, but on account of conditions over which he has no control, and his death, prevents him from making the change in accordance with the rules of the association, the court will regard the change as made. This rule, if applicable to this case, would not aid respondent, because as heretofore held, the facts do not bring the case within the rule.

Respondent's bill of interpleader alleged that insured prior to his death intended to and did transfer one-half interest in and to said benefit certificate to her. Contention is made that as the motion for judgment on the pleadings admits all facts appearing in the pleadings, it, therefore, stands admitted that insured transferred one-half interest in the benefit certificate to her.

The trouble with this contention is that the facts out of which this alleged transfer arose appear in the pleadings, and it is our duty to consider such facts. We have already discussed them and concluded that they do not bring the case within the rule governing the change of beneficiary as announced by the courts of either Missouri or Ohio.

The judgment of the trial court is reversed and cause remanded with directions to the trial court to set aside the judgment rendered in this cause and enter judgment in favor of appellant, Ralph L.

Adams for $1875, less the sum of $100 allowed and paid to plaintiff's counsel as attorney fees. *Williams, C.,* concurs.

PER CURIAM:—The foregoing opinion by FRANK, C., is hereby adopted as the opinion of the court. All concur, except *Trimble, P. J.,* absent.